UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA GERRIDEE BUTLER,<br>Plaintiffs,<br>v.<br>NANCY A. BERRYHILL,<br>Defendants. | Case No. 18-CV-3362-KAW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Dkt. Nos. 15, 18 |

Plaintiff Brenda Gerridee Butler seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment, and GRANTS Defendant's cross-motion for summary judgment.

## I.  BACKGROUND

Plaintiff applied for Title II benefits on September 9, 2014. (Administrative Record ("AR") 231.) Plaintiff asserted disability beginning April 1, 2011. (AR 259.) The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. (AR 125, 137.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 155.)

On January 27, 2017, the ALJ held a hearing on Plaintiff's claim. (AR 71-114.) Following the hearing, the ALJ rejected Plaintiff's application on June 30, 2017. (AR 44-56.) Plaintiff filed a request for review of the ALJ's decision with the Appeals Council on July 17, 2017. (AR 229.) The Appeals Council denied Plaintiff's request for review on April 20, 2018. (AR 1-5.)

1    On June 7, 2018, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C.
2    § 405(g).  (Compl., Dkt. No. 1.)  On October 15, 2018, Plaintiff filed her motion for summary
3    judgment.  (Plf.'s Mot., Dkt. No. 15.)  On December 13, 2018, Defendant filed her opposition and
4    cross-motion for summary judgment.  (Def.'s Opp'n, Dkt. No. 18.)  Plaintiff did not file a reply.

**II.    LEGAL STANDARD**

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Id.*  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under SSA regulations, disability claims are evaluated according to a five-step sequential evaluation.  *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).  At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity.  *Id.*  If so, the claimant is not disabled.  20 C.F.R. § 404.1520(b).  At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c).  *Reddick*, 157 F.3d 715 at 721.  If the answer is no, the claimant is not disabled.  *Id.*  If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1, 20 C.F.R. § 404.1520(d).  If this requirement is met, the claimant is disabled.  *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional

2

capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III. THE ALJ'S DECISION

On June 30, 2017, the ALJ issued an unfavorable decision. (AR 44-56.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity between the alleged onset date of April 1, 2011 through her date last insured of December 31, 2016. (AR 46.)

At step two, the ALJ identified the following severe impairments: degenerative disc disease, osteoarthritis and meniscus tears of bilateral knees, and status-post total left knee arthroplasty. (AR 46.) The ALJ noted that Plaintiff had other impairments, including medical impairments of affective disorders and anxiety-related disorders, but found that they did not affect Plaintiff's ability to perform basic mental work activities. (AR 47.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 49.)

At step four, the ALJ determined that Plaintiff had the RFC to perform light work, except that Plaintiff could occasionally balance, stoop, kneel, crouch, crawl, and occasionally climb ramps, stairs, ladders, ropes, or scaffolds. (AR 50.)

In so finding, the ALJ explained that Plaintiff had alleged she was disabled because of physical problems arising from her cervical and lumbar spine and knees. (AR 50.) Specifically, Plaintiff asserted that her neck and upper back problems caused her to have headaches, tingling in her arms, and difficulty with looking down. (AR 50.) Plaintiff also stated that she had problems with her knees, and could only walk up to two blocks at a time before needing a break. (AR 50.)

3

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence. (AR 50-51.) The ALJ acknowledged that Plaintiff had significant degenerative changes in her cervical spine that had required surgical intervention, as well as surgical intervention to her knees. (AR 51.) The ALJ pointed to a July 2015 MRI showing a lateral meniscal tear in Plaintiff's right knee, as well as a planned right knee arthroscopy in February 2017. (AR 51.) The ALJ ultimately found, however, that while this surgical history lent support to her allegations, "they were undermined by her longitudinal examination findings and pain management." (AR 51.) Specifically, between April 2011 and December 2016, Plaintiff's neck, upper back, and knees were "largely unremarkable." (AR 51.) Plaintiff had inconsistent and sporadic signs of painful or decreased range of motion in her neck, tenderness and muscle spasms in her upper back, and decreased range of motion in her knees, "but she consistently retained full motor strength and sensation in her arms and legs." (AR 51.) Likewise, Plaintiff's gait was generally normal or unremarkable, and even in the run up to her right knee surgery, Plaintiff only demonstrated a "'mildly' antalgic gait." (AR 51.)

The ALJ also found that Plaintiff's longitudinal pain management undermined her allegations of disability, explaining that Plaintiff's pain management was generally conservative and usually consisted of a basic nonsteroidal anti-inflammatory, as well as periodic injections for her knees. (AR 52.) The ALJ explained that if Plaintiff's "physical symptoms were as severe as alleged, they would have likely been more evident and limiting on examination or required more significant pain management." (AR 52.)

The ALJ further found that Plaintiff's allegations were undermined by her reported activities. (AR 52.) Plaintiff was able to perform many activities of daily living, including preparing meals and driving herself. (AR 52.) The ALJ also noted that Plaintiff had claimed she could only pay attention for fifteen minutes, but had followed the hearing for forty-five minutes. (AR 53.) Plaintiff had claimed she was too afraid to drive, but had driven to the field office. (AR 53.) Further, although Plaintiff claimed social anxiety, agoraphobia, and physical limitations, Plaintiff was regularly going to the gym in 2014, completed an MA program and internship

4

involving patient interactions, and was still going to the gym and using her anxiety medicines sparingly in 2015. (AR 53.) Plaintiff also took complex classes for her degree and a tennis class. (AR 53.)

The ALJ then evaluated the various opinions. The ALJ gave great weight to the opinions of medical consultants D. Rose, M.D. and B. Sheehy, M.D., who prepared functional capacity assessments in December 2014 and April 2015. (AR 53.) Both opined that Plaintiff could perform light work and occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds. (AR 53.) The ALJ found those opinions were supported by the review of the medical record and their experience with assessing functionality. (AR 53.)

Next, the ALJ gave little weight to the March 2016 Cervical Spine Residual Functional Capacity Questionnaire prepared by Emily Ramsey, nurse practitioner, and Rhonda Berney, M.D. (AR 53.) Dr. Berney and Ms. Ramsey opined that Plaintiff should be restricted to less than sedentary exertion work with significant limitations for cervical spine range of motion and postural activities, that Plaintiff would need two unscheduled breaks, and that her symptoms would frequently interfere with her concentration. (AR 53.) The ALJ noted that it was unclear Dr. Berney had examined Plaintiff, that the opinion was unexplained, inconsistent with examination findings indicating Plaintiff had a normal gait, inconsistent with Plaintiff's limited pain management, and contradicted by Plaintiff going to the gym and her general activities. (AR 53.)

The ALJ also gave little weight to the June 2015 opinion of Lynne C. Hinkle, a physician's assistant. (AR 53.) Ms. Hinkle's opinion was similar to that of Dr. Berney's and Ms. Ramsey's opinion, except that Ms. Hinkle also found that Plaintiff had significant manipulative limitations and that her mental condition would interfere with regular schedules and routines. (AR 53.) The ALJ again found that this opinion was unexplained and inconsistent with Ms. Hinkle's normal findings regarding Plaintiff's arms and hands, as well as Plaintiff's daily activities. (AR 53.)

Finally, the ALJ gave little weight to the third-party function report by Plaintiff's daughter, which "largely echoed [Plaintiff's] allegations." (AR 53-54.)

At step five, the ALJ found that Plaintiff was unable to perform any past relevant work.

(AR 54.) The ALJ concluded that based on Plaintiff's age, education, work experience, and RFC, in conjunction with vocational expert testimony, that Plaintiff could perform occupations including a cashier, ticket seller, and photocopying-machine operator. (AR 55.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 56.)

## IV. DISCUSSION

In her motion for summary judgment, Plaintiff's sole argument is that the ALJ should not have relied solely on Dr. Sheehy and Dr. Rose because they did not consider evidence after 2014. (Plf.'s Mot. at 6.) For example, Plaintiff points to various evidence from 2015 through 2017 that Dr. Sheehy and Dr. Rose would not have considered, as they occurred after Dr. Sheehy's and Dr. Rose's evaluations. (*Id.* at 6-7.) This evidence included the July 2015 MRI of Plaintiff's right knee, various injections in Plaintiff's right knee, and the scheduled February 2017 right knee surgery. (*Id.*) Plaintiff contends that the ALJ thus impermissibly assessed Plaintiff's limitations 'based on her own analysis of the subsequent raw medical data in functional terms," an analysis that the ALJ "[wa]s not qualified to make." (*Id.* at 8.) Plaintiff does not contend that the ALJ erred in her assessments of the various medical opinions.

In general, an ALJ may not act as her own medical expert, as she is "not qualified to interpret raw medical data in functional terms." *Nguyen v. Chater*, 172 F.3d 31, 55 (1st Cir. 1999); *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (finding that the ALJ was not qualified to extrapolate functional limitations from raw medical data). The Court, however, finds that the ALJ did not err in this case.

In *Karen E. v. Berryhill*, the plaintiff made the same argument that "the ALJ's reliance on State Agency physicians' opinions from August 2013 and January 2014 failed to account for medical evidence from the following two years for treatment plaintiff received for lower back pain and carpal tunnel syndrome," and that the ALJ therefore impermissibly interpreted the medical records. Case No. ED CV 17-918-SP, 2019 WL 1405835, at *2 (C.D. Cal. Mar. 27, 2019). The district court disagreed as to the lower back pain, explaining:

> [The State Agency physicians] considered the evidence then
> available to them concerning plaintiff's back problems, among other
> impairments, and opined limitations accordingly. The ALJ gave

> significant weight to these opinions, but also reviewed in detail the subsequent medical evidence in the record of plaintiff's treatment for low back pain, including MRI findings, epidural steroid injections, pain medication, and the results of these treatments. The ALJ particularly noted that plaintiff reported receiving good pain relief from the injections and medication, with her symptoms improving as a result of this treatment. Thus, although there was additional evidence not considered by the State Agency physicians, the ALJ concluded it did not demonstrate a more severe lower back impairment than what [the State Agency physicians] already considered in formulating their opinions.
>
> Certainly it may have been helpful for the ALJ to retain a medical expert to review these records, but it was not necessary where, as here, the ALJ reviewed the substantial medical evidence that supported his RFC determination with respect to plaintiff's lower back pain.

*Id.* at *3 (internal citations omitted). The district court did agree with the plaintiff as to the carpal tunnel syndrome, as the State Agency physicians had not reviewed any records concerning his carpal tunnel.

Here, Dr. Sheehy and Dr. Rose both reviewed the available medical evidence, which included records concerning Plaintiff's spine and her knee impairments. (*See* AR 119-120, 131-32.) The ALJ then reviewed the subsequent medical evidence, specifically discussing much of the evidence that Plaintiff now points to, including the injections to Plaintiff's right knee, the July 17, 2015 MRI, and the then-upcoming February 2017 knee surgery. (AR 51-52.) Other evidence included that Plaintiff's gait was generally normal or unremarkable, and that she had few instances of antalgic gait or limping even preceding her knee surgery. (AR 51.) The ALJ also explained that Plaintiff's pain management was generally conservative, other than periodic injections for her knees. (AR 52.) This showed that Plaintiff's back and knee conditions "were generally unremarkable between April 2011 and December 2016." (AR 52.) Further, any claims of more severe symptoms was undermined by Plaintiff's reported activities, which included preparing meals, driving, regularly going to the gym, completing an MA program that included an internship with patient interactions, and taking a tennis class. (AR 52-53.) Thus, as in *Karen E.*, the ALJ could reasonably conclude that the evidence post-dating the opinions of Dr. Sheehy and Dr. Rose did not demonstrate more severe impairments or limitations than that already found by Dr. Sheehy and Dr. Rose, but was consistent with their conclusions. Notably, Plaintiff does not argue how the

7

subsequent medical evidence would require greater limitations than those opined by Dr. Sheehy and Dr. Rose, or that they are even inconsistent with the evidence reviewed by Dr. Sheehy and Dr. Rose.

### V. CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

IT IS SO ORDERED.

Dated: September 30, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge